Filed 8/20/24; Certified for Publication 9/11/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHERYL LYNCH, Individually and as Trustee, etc., | |
| Plaintiff and Appellant, | G063021 |
| v. | (Super. Ct. No. 30-2021-01183592) |
| PETER & ASSOCIATES, ENGINEERS, GEOLOGISTS, SURVEYORS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Recio, Judge. Reversed and remanded with instructions.

Tomassian, Inouye & Grigorian, Serge Tomassian and Talin Grigorian-Tabrizi for Plaintiff and Appellant.

The Morrison Law Group and Edward F. Morrison, Jr., for Defendant and Respondent.

This case demonstrates the veracity of the California Supreme Court's observation that "[t]he declining significance of privity has found its way into construction law." (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 574 (*Beacon*).) Appellant sued, amongst others, a soils engineering firm that had performed what is alleged to be a very cursory geotechnical inspection of an excavated footing trench on her property for a home remodeling project. She brought claims against the firm for professional negligence and nuisance when her home sustained significant damage from subsidence resulting from the construction. The firm filed for summary judgment, arguing it had no contract with appellant, and thus owed her no duty of care. The trial court agreed and granted the firm's motion. For the reasons stated herein, we find the respondent firm failed to meet its moving burden. And we also hold it did in fact owe appellant a duty of care. We therefore reverse.

STATEMENT OF FACTS

Appellant Cheryl Lynch is the owner of residential real property located at 401 Avenida Arlena in San Clemente (the subject property).[1] In the summer of 2015, the Lynches engaged a general contractor, Hutton Construction (Hutton), to perform two phases of home improvement construction and repairs on the subject property, as per plans prepared by architect Benjamin Stevens. The construction proposed was: a remodel of the

---

[1] At all times relevant to the lawsuit in this case, and at the time of commencement of the action, appellant owned the property with her husband, Gregory, as trustees of The Lynch Family Trust dated August 29, 1997 (the trust). Unfortunately, Mr. Lynch passed away while the lawsuit was pending and thus, Mrs. Lynch (individually, and as trustee of the trust) is the sole appellant. Nevertheless, in describing many of the events that occurred while Mr. Lynch was alive, we will often refer to the Lynches as a couple for purposes of precision.

existing residence, building additions along the south and north sides of the existing residence, a site retaining wall along the northern property boundary, underpinning of the existing foundation along the general west side of the existing residence, a new raised wood deck west of the residence, and surrounding hardscape improvements.

The first phase of work was governed by a contract dated July 27, 2015. Pursuant to Stevens' plans, the first phase involved site improvements. This work was to commence August 3, 2015, and finish by September 14, 2015. The total to be paid to Hutton on the first phase was $154,677.60.

The second phase was governed by a contract dated July 8, 2016. This phase was to consist of the residence remodel and addition. The second phase was to commence June 14, 2016, and finish by October 14, 2016. The total to be paid to Hutton on the second phase was $250,679.59.

In September 2014, Stevens requested a geotechnical services proposal from Coastal Geotechnical (Coastal), a local geotechnical engineering firm. Coastal provided its proposal, which was addressed to the Lynches, on September 23, 2014, stating Coastal would "evaluate the geotechnical conditions beneath the accessible portions of [the] property, and . . . provide grading and foundation recommendations for the proposed construction" for an estimated cost of $5,800. Included in Coastal's scope of work was review of available reports, maps, and photographs; subsurface exploration by way of manually excavated test pits for geologic observation and soil and rock sampling; laboratory testing of samples; engineering and geologic analysis; and preparation of a final report with test results, analyses, conclusions, and recommendations. Coastal noted that published geologic maps of the area showed the subject property was situated on a "queried

3

landslide," and it emphasized its scope of work was not intended to remedy that issue specifically or the slope stability issues that might accompany it.

The overall timeline of the project and its issues, as well as the involvement of the various contractors and subcontractors, is not made crystal clear by the record before us. However, it appears that by the spring of 2018, the Lynches replaced the general contractor, Hutton, with an outfit called Grover Construction (Grover). On April 25, 2018, Grover engaged the respondent, Peter & Associates, Engineers, Geologists, Surveyors, Inc. (the Peter firm), to do a geotechnical inspection of a footing trench it had excavated for the proposed addition on the property. The contract for this work, written up on the Peter firm's letterhead, provided the Peter firm would be paid $360. The contract also contained the following provision: "This contract does not include: [¶] 1. Subsurface exploration, laboratory testing, settlement analysis and/or slope stability calculations. Peter & Associates, Inc. is not responsible for potential settlement and/or slope failure, if any. [¶] 2. Geotechnical review of grading plan, foundation plan, and/or structural design calculations, if any. Peter & Associates, Inc. is not responsible for adequacy of the plans/calculations." The Peter firm's contract did not mention the Lynches and contained no clause pertaining to third party beneficiaries. It also contained a clause limiting their liability to twice their fee.

Grover paid the Peter firm $360 on April 25, 2018, and that same day, the Peter firm sent a licensed civil and geotechnical engineer named Lan Pham to inspect the footing on the subject property. Pham's inspection consisted of visual observation of the trench, and use of a steel probe three feet in length to "punch it down" into the trench to feel the soil. Afterward, he prepared a single-page handwritten memo summarizing his findings. The memo was addressed to both Mike Grover, principal of Grover, and "Gregory

4

& Cheryl Lynch." The subject heading read "Geotechnical Acceptance of Excavated Footing Trenches for Project Addition . . . ." Pham's findings were, in part: "The excavated footing trenches exposed firm competent bearing earth materials, generally consisted [*sic*] of dark grey silty clay, damp moist and stiff, and are considered geotechnically acceptable and suitable for the intended use."

Grover went ahead and poured the footing, but the soil proved inadequate to the task of holding it up. The footing for the addition collapsed, and the house subsided in that area, moving laterally toward the slope underneath. Appellant was required to install a grade beam and caissons to support the collapsed addition. As of May 2023, the house included over 4.9 inches of deflection, and had cracks in the floor and foundation, and other signs of distress.

PROCEDURAL HISTORY

The Lynches filed suit in February 2021 against Hutton, Coastal, Stevens, the Peter firm, and other subcontractors for breach of contract, nuisance, and negligence. The operative pleading, the third amended complaint, was filed on September 7, 2022. The Peter firm was named as a defendant on the fifth cause of action for professional negligence and the sixth cause of action for nuisance.

On January 23, 2023, the Peter firm filed a motion for summary judgment against the third amended complaint, on the ground that it had "no legal liability to" appellant "under any negligence or nuisance theory." The motion did not seek summary adjudication in the alternative. The Peter firm argued it had no legal liability to appellant because it was "a small engineering firm" hired to inspect a single footing "for a fee of $360." It also cited the exclusions in the contract, as well as the fact it had no other role in

the construction project and had no contract with the Lynches. Relying heavily on our opinion in *Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc.* (2004) 125 Cal.App.4th 152 (*Weseloh*), and using the factors our Supreme Court first outlined in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) and later discussed in *Beacon*, the Peter firm argued it owed appellant no duty of care, professional or otherwise. As for appellant's nuisance claim, the Peter firm contended its personnel were only on the property one time, and were paid such a small sum that the firm could not possibly be held liable for nuisance.

After hearing argument and taking the matter under submission, the trial court, swayed significantly by *Weseloh*, granted summary judgment.

DISCUSSION

Appellant takes issue with this ruling on three grounds. First, despite a lack of privity, she contends the Peter firm did indeed owe her a duty of care pursuant to the *Biakanja* factors, in large part because she and her late husband were the intended direct beneficiaries of the work being performed. She submits that *Weseloh* is distinguishable and limited to its facts. Second, she says there are triable issues of fact regarding her nuisance cause of action and the trial court erroneously concluded her nuisance claim was identical to her negligence claim. Finally, she thinks the trial court erred by sustaining in blanket fashion the Peter firm's objections to two declarations she filed in opposition to summary judgment—her own declaration and that of her expert, Gregory Axten. We agree with her on all three points.

## I.

### MOTIONS FOR SUMMARY JUDGMENT AND STANDARD OF REVIEW

Our Supreme Court has acknowledged that summary judgment is less "disfavored" now than it once was, especially since Code of Civil Procedure section 437c[2] was amended to bring it closer to the federal rules. (See *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) But this does not mean the standards and principles for granting summary judgment have changed. The trial court is still required to determine "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) To be entitled to judgment as a matter of law, thus foregoing a trial, a moving defendant still has the burden to show the plaintiff's cause of action has no merit. This is done by showing either that "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action." (*Id.*, subd. (p)(2).) Then, and only then, does the burden shift to the plaintiff to show the existence of triable issues of material fact regarding the cause of action or a defense thereto. (*Ibid.*)

"In reviewing a grant of summary judgment, we conduct an independent review to determine whether there are triable issues of material fact and whether the moving party is entitled to judgment as a matter of law." (*Flores v. City of San Diego* (2022) 83 Cal.App.5th 360, 372.) In doing so, "[w]e apply the same standards as the trial court[.]" (*Ibid.*) The moving

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

party's evidence is strictly construed and the opposing party's evidence liberally construed. (*Ibid.*)

In this case, the Peter firm failed to meet its moving burden on summary judgment. Even if it negated the element of duty in appellant's negligence claim—which, to be clear, it did not—it failed to make any showing whatsoever to invalidate appellant's nuisance claim. Its argument regarding nuisance was limited to one sentence in its moving memorandum of points and authorities stating it was on the property once and was paid $360 to inspect a single excavated trench. But it offered no authority explaining why or how these facts negate any element of appellant's nuisance claim. For this reason alone, the motion should have been denied. As we explain below, however, that was not the only problem with the motion.

## II.

### PROFESSIONAL NEGLIGENCE AND DUTY OF CARE

It is axiomatic that liability for negligence in any scenario must be premised on a duty of care, and "[t]he existence and scope of a defendant's duty is an issue of law to be decided by the court." (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 838.) When professional negligence is alleged, the plaintiff must show the defendant had a duty "to use such skill, prudence and diligence as other members of the profession commonly possess and exercise[.]" (*Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137.) In times past, "it was generally accepted that . . . there was no liability for negligence committed in the performance of a contract in the absence of privity." (*Biakanja*, *supra*, 49 Cal.2d at p. 649.) However, as our Supreme Court recognized as far back as 1958 in *Biakanja*, "the rule has [since] been greatly liberalized, and the courts have permitted a plaintiff not in privity to

recover damages in many situations for the negligent performance of a contract." (*Ibid*.)

In *Biakanja*, the plaintiff stood to inherit her late brother's estate by dint of the will prepared by the defendant, who, though not an attorney, had prepared letters and income tax returns for the decedent for several years. (*Biakanja, supra,* 49 Cal.2d at p. 648.) The will lacked sufficient attestation and was denied probate. Plaintiff sued the defendant when she only inherited one-eighth of the estate by intestate succession. Defendant argued there was no privity of contract between himself and the plaintiff, and thus he owed her no duty of care in preparing her brother's will. (*Ibid*.) Our high court disagreed and laid out for the first time a set of factors for courts to use in determining whether a duty of care exists outside of contractual privity. The factors to be balanced included "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.* at p. 650.) These have since become known as the *Biakanja* factors. In applying the factors, the *Biakanja* court noted the defendant had to have been aware that plaintiff would have suffered loss if he negligently prepared the will, because he knew from its terms that she stood to inherit. But for his negligent preparation of the will, she would have received her rightful inheritance. And his conduct was morally blameworthy because he engaged in the unauthorized practice of law in undertaking to draft the will. (*Id.* at pp. 650-651.)

Thirty-four years later, in *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 (*Bily*), the state high court substantially restricted the scope of

9

the professional duty owed by auditors to the investing public. In that case, investors in a now-defunct computer company sued the company's audit firm when they issued clean opinions on the company's financial statements right before it began to implode financially. (*Id.* at pp. 377-378.) The plaintiffs prevailed at trial on their professional negligence cause of action, and the audit firm appealed. (*Id.* at p. 379.) For various policy reasons, the high court determined that the audit firm only owed a duty of care for general negligence to its client, and not to the investors who relied on its report.[3] (*Id.* at p. 406.) However, the court seemed to recognize that the damage caused by an auditor's negligence is economic in nature, in contrast to "personal injury and property damage." (*Id.* at pp. 385, 398, 400.) Because appellant here has suffered property damage as a result of the Peter firm's alleged negligence, *Bily* is not dispositive of the duty issue before us.

To that point, California cases dealing with negligence by construction professionals often take a harder line in general than those in the accounting and audit space. Four years before *Biakanja*, in fact, the state supreme court in *Gagne v. Bertran* (1954) 43 Cal.2d 481 (*Gagne*) affirmed a judgment against a soils consultant who plaintiff hired to test for fill on a property he was buying for purposes of building an apartment complex. The consultant, who failed to mention he was neither a geologist nor a soils engineer, gave his blessing for plaintiff to begin trenching for the foundation; but upon doing so, it was discovered the fill required a much deeper

---

[3] The high court did sanction a cause of action for negligent misrepresentation against auditing firms for inaccurate information when a plaintiff can show that the representation was intended to influence them directly. (*Bily*, *supra*, 3 Cal.4th at p. 407.) Because appellant has alleged no negligent misrepresentation claim, this point is an interesting but moot one.

foundation than originally expected. (*Id.* at pp. 484-485.) Our high court's assessment was scathing. "The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance." (*Id.* at pp. 489-490.) It went on: "Defendant's duty of care in performing the soil test was established by his contract with plaintiffs . . . had defendant made his test with due care, he would have discovered the true extent of the fill. . . . Defendant's repeated assertion that he was not qualified to test for soil fill, contrary to the finding that he so held himself out, and the testimony of his expert witness that laboratory tests were necessary, also indicate that defendant did not exercise the ordinary skill and competence of those in the business of soil testing." (*Id.* at p. 490.)

While the plaintiff and defendant in *Gagne* were in contractual privity, we cannot help but note the similarities between *Gagne* and this case in terms of the faulty work alleged to have been done. Appellant too claims the Peter firm would have been able to render an accurate opinion on the load the soil could bear had it performed an adequate investigation. Indeed, the language of *Gagne* supports a duty of care owed by the Peter firm to at least Grover because of their contract. Is it so speculative to think the Peter firm could owe the same duty to the direct and intended beneficiaries of the work to be performed under the contract, i.e., the Lynches? We think not.

In fact, the Peter firm attempts to make a very similar argument to the one rejected by the First District Court of Appeal in *M. Miller Co. v. Dames & Moore* (1961) 198 Cal.App.2d 305 (*Miller*). There, a general

11

contractor sued a soils engineering firm employed by the property owner and civil engineer on a project to "construct a portion of an outfall sewer system[.]" (*Id.* at p. 307.) The soils engineer allegedly conducted its tests in a negligent manner and its final report failed to disclose unstable material underneath the construction site. Because the report was intended to influence prospective bidders on the project and was made available to them prior to bidding, plaintiff alleged the soils engineer had a duty of care to such bidders in rendering its opinion. (*Ibid.*) The trial court granted an unopposed summary judgment to the soils engineer based on lack of privity, but the Court of Appeal reversed. (*Id.* at pp. 306-307.) The appellate court observed defendant knew its information would influence prospective bidders, and moreover, defendant never said its work was properly done. Defendant, like the Peter firm, pretty much relied on a lack of privity to the exclusion of any other argument. (*Id.* at p. 308.) But even without privity, the uncontradicted allegations of plaintiff's complaint would have supported a duty under the *Biakanja* factors. (*Id.* at p. 309.)

Also like the Peter firm, the defendant in *Miller* attempted to rely on limitations on its liability contained in its contract. It pointed to provisions requiring bidders to examine and investigate the site for themselves. (*Miller, supra,* 198 Cal.App.2d at p. 309.) But the court noted these provisions were not necessarily binding on the plaintiff. (*Id.* at p. 310.)

Appellant also helpfully points us to *Shurpin v. Elmhirst* (1983) 148 Cal.App.3d 94 (*Shurpin*), a case the Peter firm decided not to address in its respondent's brief. There, plaintiff experienced a landslide of mud and debris from a neighboring property, causing structural damage to his property. The neighbor, defendant Elmhirst, hired a firm called Geosoils to reconstruct the slope. Geosoils submitted recommendations for the

reconstruction, which were completed by another contractor. (*Id.* at p. 97.) Shurpin filed a lawsuit against, amongst others, Elmhirst and Geosoils for negligence and nuisance. Geosoils demurred to the complaint and trial court sustained the demurrer without leave to amend. (*Id.* at pp. 97-98.) The appellate court reversed, holding Geosoils owed a duty of care to foreseeable plaintiffs such as Shurpin, clearly an intended beneficiary of the work. (*Id.* at pp. 99-100.)

All of this brings us to *Weseloh*, the case sitting at the heart of this appeal. *Weseloh* was also a summary judgment case; it involved design engineers Owen Engineering Company (Owen) and its employee Charles Randle, who were paid $1,500 to $2,200 by a subcontractor, Sierra Pacific Earth Retention Corporation (Sierra), for the design of two retaining walls at a commercial auto dealership. (*Weseloh, supra,* 125 Cal.App.4th at pp. 158-159.) When the retaining walls failed, the owners of the property sued Owen and Randle for a defective design. (*Id.* at p. 160.) Randle and Owen filed motions for summary judgment based on lack of duty of care. The trial court granted the motions. (*Id.* at p. 161.) We found Randle and Owen had established a lack of contractual privity with plaintiffs, and thus, the burden shifted to the plaintiffs to show a triable issue of material fact as to duty. (*Id.* at p. 164.) This they did not do.

Analyzing the *Biakanja* factors, we found Randle and Owen's participation in the project was intended primarily to benefit Sierra, not the property owners. (*Id.* at p. 167.) Plaintiffs failed to produce evidence showing how and to what extent their damages were caused by Randle and Owen's allegedly defective design. (*Weseloh, supra,* 125 Cal.App.4th at p. 168.) There was also no evidence to indicate Randle and Owen participated in or supervised the construction of the retaining wall. (*Id.* at p. 169.) Randle and

13

Owen shouldered little, if any, moral blame, and finding a duty would not prevent future harm, since plaintiffs could have protected themselves through inclusion of a beneficiary clause in the contract between Randle/Owen and Sierra. In the end, we were very clear that *Weseloh* should "not be interpreted to create a rule that a subcontractor who provides only professional services can never be liable for general negligence to a property owner . . . with whom no contractual privity exists." We found it altogether conceivable that "a set of circumstances that would support such a duty" could exist. (*Id.* at p. 173.) And here we have such a case.

Indeed, there is much distinguishing our case from *Weseloh*. First and foremost, as appellant emphasizes, the project here was not commercial, as it was in *Weseloh*, but residential. Contractors working on a residential project surely know their work directly impacts a person's home, which changes the analysis substantially. And as appellant points out, unlike in *Weseloh*, the defendant's written report was addressed directly to the Lynches as well as Grover. The Peter firm knew its contract with Grover was for appellant's benefit. Also, appellant argues the same footing trench inspected by the Peter firm was inadequate to hold up the foundation as represented by Pham in his report. This same foundation failed and required further repairs. The Peter firm does not show that the soil in the excavated trench was adequate for the intended use. Additionally, the Peter firm's contract contained exclusions, essentially allowing it to abdicate some of the basic steps necessary to make the geotechnical inspection it was required to make.

Many questions of fact arise from these exclusions. Did the Peter firm's scope of work include or exclude subsurface exploration, laboratory analysis, slope stability calculations, settlement analysis, and review of

14

grading plans, foundation plans, and other geotechnical reviews (one of which had already been performed by Coastal)? How exactly was it able to perform any sort of meaningful geotechnical inspection? Appellant's expert, Gregory Axten, opined that the geotechnical inspection the Peter firm agreed to conduct "required it to do some, if not all, of the tasks it excluded from its contract."[4]

Another reason to diverge from *Weseloh* is because, 10 years after we published the opinion, the state high court handed down *Beacon*. Albeit a case decided on a demurrer, *Beacon* looms large because the court was willing to deviate from the *Bily* line of cases and take a different view of residential construction professionals. In *Beacon*, the court held a principal architect owes a duty of care to future homeowners of a residential building site, even without any contractual privity. (*Beacon*, *supra*, 59 Cal.4th at p. 571.) *Beacon* distinguished *Bily*'s policy concerns about limitless liability, and noted that, unlike the audit firm in *Bily*, the principal architect defendant had "played a lead role not only in designing" the defective homes, "but also in implementing the Project design." (*Id*. at pp. 583-584.) To be sure, *Beacon* indicates the high court is far more likely to sanction a professional duty of care in residential construction.

In light of all of this precedent, we return to the *Biakanja* factors. The allegations in appellant's professional negligence claim against the Peter firm echo *Biakanja*'s language. Therefore, in order to sustain its moving burden, the Peter firm was obligated to meaningfully address these factors in its papers, which it failed to do. Instead, it focused on aligning itself with

---

[4] The trial court sustained evidentiary objections to the Axten declaration, which we will address shortly.

*Weseloh* and distinguishing itself from *Beacon*, and its analysis of the factors essentially came down to one phrase: "the $360 contract with Grover Construction was to inspect one footing[.]"

Our analysis of the factors is quite different. All six factors support finding a duty of care in this case. First, as we have already noted, the transaction was most definitely intended to affect the Lynches as homeowners, and the harm to them if the job was not correctly done was certainly foreseeable. Coastal had noted as early as 2014 the property's being situated on a possible landslide area, which was information easily accessible to the Peter firm if they had tried to obtain it. Because of the nature of the property, the Peter firm had to have known a proper soils inspection was crucial to successfully building the foundation for the addition. The injury here is reasonably certain: appellant claims the house has subsided laterally into the slope, which suggests the ground underneath the house is moving. It is less clear who is more or less responsible for the subsidence, but certainly given what has occurred, a trier of fact could reasonably conclude that the Peter firm's inspection should have raised the soil issues. And the Peter firm did not submit any evidence to show its inspection was adequate. As we have already said, moral blame attaches due to the contract between Grover and the Peter firm. And finding a duty in this case would further the policy of preventing harm. We hold the Peter firm owed appellant a duty of care to perform its geotechnical inspection with the skill expected of a professional in its position.

### III.

### NUISANCE

As we previously explained, the motion for summary judgment failed to undermine or negate any element in appellant's nuisance claim

16

either. Under Civil Code section 3479, a nuisance includes "an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property[.]" Appellant alleges the damage to her house is ongoing as the slope underneath it continues to essentially give way. In its motion, the Peter firm argued it was only on the property once to conduct a single inspection of one footing, and thus could not be held liable for nuisance. Nothing could be further from the truth. As *Shurpin* counsels, "not only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation[.]" (*Shurpin*, *supra*, 148 Cal.App.3d at p. 101.) The Peter firm did not adduce any evidence showing it was *not* responsible for the damage and subsidence at the Lynches' home, whether it was the result of one trip to the property or multiple trips.

At oral argument, we asked respondent's counsel whether the Peter firm's motion actually negated any element of appellant's nuisance claim. Counsel pointed us to the trial court's ruling, which, relying on *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1349 (*El Escorial*), concluded that appellant's nuisance claim is identical to or duplicative of her negligence claim. The trial court surmised both claims rely on the same facts, and appellant only sought monetary relief. Counsel did not, however, point us to any place in his moving or reply papers below in which he cited *El Escorial* or made the argument the trial court outlined. In our review of the record, we were unable to find any evidence the Peter firm

17

made this argument at all, which leads us to conclude the trial court articulated the argument on its own.[5]

We acknowledge authority to the effect that "the trial court has the inherent power to grant summary judgment on a ground not explicitly tendered by the moving party when the parties' separate statements of material facts and the evidence in support thereof demonstrate the absence of a triable issue of material fact put in issue by the pleadings and negate the opponent's claim as a matter of law. [Citations.] [¶] However, when the trial court grants a summary judgment motion on a ground of law not explicitly tendered by the moving party, due process of law requires that the party opposing the motion must be provided an opportunity to respond to the ground of law identified by the court and must be given a chance to show there is a triable issue of fact material to said ground of law. [¶] Otherwise, a party which could have shown a triable issue of material fact put in issue by the complaint or answer but neglected to do so because the point was not asserted by the moving party as a ground for summary judgment would be deprived unjustly of the chance to demonstrate the existence of a triable issue of material fact which requires the process of trial. Moreover, if the dispositive ground of law was not asserted in the trial court by the moving party and the record fails to establish that the opposing party could not have shown a triable issue of material fact had the ground of law been asserted by the moving party, a reviewing court ordinarily cannot determine if the trial

---

[5] The trial court seemed to acknowledge this at the hearing on the motion: ". . . because I think nuisance in the context of the facts in this case regarding construction, I think it really is then a negligence claim and I think I cited something. *I realize that–I don't think it was cited by either side*, but I was trying to understand the nuisance claim in the context of this case."

18

court's decision was correct." (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70-71.)

Such is our difficulty. There is no evidence in the record to indicate appellant could not have shown a triable issue of material fact distinguishing her negligence and nuisance claims had the Peter firm made this argument. Indeed, the pleading shows, contrary to the trial court's finding, that appellant has sought abatement of the nuisance—injunctive relief—not simply monetary damages. On the face of the pleading, the nuisance claim is thus a different cause of action with a different remedy, which renders summary judgment based on *El Escorial* improper.

Despite having presumably very little, if any, time to prepare a response, appellant's counsel also explained to the trial court why its impression was inaccurate: ". . . the conduct in and of itself doesn't have to be negligence to constitute a nuisance . . . [¶] . . . [¶] . . . the conduct—that is, issuing this report and the resulting failure of the foundation system on this Hill's property, constituted nuisance because it interferes with the use and enjoyment of our client's property as a result of the damage. [¶] . . . even if the court determines that [the Peter firm was not negligent], their conduct still resulted in the interference with the use and enjoyment of one's property." The trial court thereafter expressed a worry that "any wrongdoing" could "lead to any nuisance claim[,]" to which counsel responded: "only if it results in the interference of use and enjoyment of one's property."

Counsel provided the court with an accurate statement of the law. "[I]t is well settled in this state that an owner of land may not do even nonnegligent acts on his property with impunity where they create a nuisance as to his neighbor." (See *Sturges v. Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 318.) "To prevail on an action for private nuisance, a

19

plaintiff must first prove an interference with the plaintiff's use and enjoyment of his or her property. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 . . . .) Second, 'the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer "substantial actual damage."' (*Ibid*.) Third, "'[t]he interference with the protected interest must not only be substantial, but it must also be *unreasonable*" [citation], i.e., it must be "of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land."' (*Ibid*.; accord, *Mendez*[(*v. Rancho Valencia Resort Partners, LLC*] 3 Cal.App.5th [248,] 262–263.)" (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 253 (*Chase*).)

To be sure, the trial court's concern about the scope of a potential nuisance claim dovetails with the *El Escorial* court's opinion that the statutory definition of a nuisance "is so broad that it could be "'. . . applied indiscriminately to everything . . . .'" [Citation.]" (*El Escorial*, *supra*, 154 Cal.App.4th at p. 1348, quoting *City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 585 (*U.S. Gypsum*).) The elements laid out for a private nuisance claim in *Chase*, however, provide the limitations which address these concerns. When conduct is alleged by a nuisance plaintiff to obstruct the free use of property, the plaintiff cannot simply allege a fleeting or trivial obstruction. Rather, the obstruction must be substantial, and it must unreasonably interfere with the plaintiff's use of her property.

*El Escorial* and its predecessor, *U.S. Gypsum*, it should be noted, were not factually similar to this case. In *U.S. Gypsum*, the City of San Diego sued the manufacturers of asbestos-containing building materials for nuisance, alleging the deterioration of the building materials had created a continuing nuisance. (*U.S. Gypsum*, *supra*, 30 Cal.App.4th at p. 584.) The

20

Second District Court of Appeal, Division Six, acknowledged that "California law has permitted recovery in nuisance where a defendant has owned or controlled property from which the nuisance arose [citation], where a defendant has created a nuisance on another's property [citation] or where a defendant has employed another to perform work that has resulted in a nuisance to plaintiff's property," but the City of San Diego could point to no case allowing "recovery for a defective product under a nuisance cause of action." (*Id.* at pp. 585-586.)

Similarly, in *El Escorial*, a panel of the same court composed of two of the same justices (Presiding Justice Gilbert and Justice Yegan) concluded a condominium owners' association could not maintain a nuisance claim against drywall contractors when defective construction resulted in toxic mold contamination. (*El Escorial*, *supra*, 154 Cal.App.4th at pp. 1343, 1348-1349.) The court found such contamination similar to the asbestos-contaminated building materials in *U.S. Gypsum. (El Escorial, supra,* 154 Cal.App.4th at p. 1349.)

This case is distinguishable from *U.S. Gypsum* and *El Escorial* in that the interference with use of property is not as remote from the defendant's conduct. The Peter firm rendered a geotechnical opinion knowing that Grover Construction would be relying on it in pouring a footing for the Lynches' remodel. The footing failed and the house continues to subside. Without question, this is a substantial and unreasonable interference with appellant's use of the property and it was one created, at least indirectly, by the Peter firm's own conduct, rather than a defective product.

But our discomfort with *El Escorial* is perhaps more fundamental. The court held: "Where negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a

21

negligence claim." (*El Escorial, supra,* 154 Cal.App.4th at p. 1349.) With great respect to our distinguished colleagues in our sister court, we find this framework for analyzing the viability of a nuisance claim in the construction defect context a bit rigid. Nuisance is an entirely separate cause of action from negligence, and the analysis should focus on whether the plaintiff has alleged all necessary elements of the claim; as set forth, for example, in *Chase*. Even if the nuisance claim relies on the same facts about lack of due care supporting the negligence claim, it does not mean the claims are identical or duplicative. Indeed, many pleadings allege numerous causes of action based on the same facts. This does not mean the causes of action are all the same.[6] Also, assessing a nuisance claim in this manner ignores the fact that a duty between defendant and plaintiff need not exist to maintain a nuisance claim. By conflating the two theories, the trial court added an element to appellant's nuisance claim she was never required to establish in the first place. We have serious due process concerns about granting summary judgment on such reasoning.

In that vein, we also echo the view of the Fifth District Court of Appeal in *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591 (*Brantley*): "Section 437c is a complicated statute. There is little flexibility in the procedural imperatives of the section, and the issues raised by a motion for summary judgment (or summary adjudication) are pure questions of law. As a result, section 437c is unforgiving; a failure to comply with any one of its myriad requirements is likely to be fatal to the offending party. [¶] Section 437c thus does not furnish the trial courts with a convenient procedural means, to

---

[6] *El Escorial* allowed that "because of the broad definition of nuisance, whether a cause of action is viable depends on the facts of each case." (*El Escorial, supra,* 154 Cal.App.4th at p. 1348.)

which only 'lip service' need be given, by which to clear the trial calendar of what may appear to be meritless or weak cases. (See *Whitaker v. Coleman* (5th Cir.1940) 115 F.2d 305, 307 [A 'catch penny contrivance to take unwary litigants into its toils and deprive them of a trial'].) Any arbitrary disregard of the statutory commands in order to bring about a particular outcome raises procedural due process concerns. (*Chevron U.S.A., Inc. v. Superior Court*[(1992)] 4 Cal.App.4th [544,] 553.) Motions for summary judgment cannot therefore properly be decided by employing a sort of detached 'smell test.' The success or failure of the motion must be determined, as we have done here, by application of the required step-by-step evaluation of the moving and opposing papers [citation.] In that way, 'due regard' will be given to the right of those persons asserting claims 'that are adequately based in fact to have those claims . . . tried to a jury' as well as to the 'rights of persons opposing such claims . . . to demonstrate in the manner provided by [section 437c] that the claims . . . have no factual basis.' (*Celotex Corp. v. Catrett*[(1986)] 477 U.S. [317,] 327.)" (*Brantley*, *supra*, 42 Cal.App.4th at p. 1607.)

## IV.

### EVIDENTIARY OBJECTIONS

Finally, we address appellant's concerns about the trial court's rulings on evidentiary objections. The Peter firm lodged three objections to appellant's own declaration and four to the Axten declaration. Each of these objections was based on multiple grounds. The trial court sustained the objections in their entirety by saying: "Each of Defendant's evidentiary objections . . . is SUSTAINED." Appellant claims this amounts to an impermissible blanket ruling on objections, and we agree.

23

Typically, review of evidentiary rulings is for abuse of discretion. But by ruling in blanket fashion on all of the objections with no explanation as to the ground relied upon, the trial court left us without information necessary to ascertain whether its discretion was abused. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852, 857.)

Furthermore, the objections were repetitive and boilerplate. For instance, the Peter firm objected to appellant's averments regarding the work done by it based on foundation, relevance, and hearsay. One such averment is paragraph 4 of her declaration, which stated: "On or about April 25, 2018, we retained Peter & Associates . . . through our general contractor, Grover . . . to provide geotechnical services and to inspect the excavated footing trenches . . . at our Property." This averment is certainly relevant since it is the Peter firm's work which is the subject of this lawsuit. Foundation for her statement is quite apparent given she is the owner of the property and she and her husband were paying for the work being done. And the averment contains no out-of-court statement implicating the hearsay rule. The Peter firm's remaining objections are similarly without merit. As such, there was no basis to sustain them.

## DISPOSITION

Summary judgment in favor of respondent is reversed and the matter remanded to the trial court with instructions to deny respondent's motion in its entirety. Appellant to recover her costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.

Filed 9/11/24

**CERTIFIED FOR PUBLICATON**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHERYL LYNCH, Individually and as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PETER & ASSOCIATES, ENGINEERS, GEOLOGISTS, SURVEYORS, INC., <br><br> Defendant and Respondent. | G063021 <br><br> (Super. Ct. No. 30-2021- 01183592) <br><br> ORDER GRANTING REQUEST FOR PUBLICATION |

Attorney Talin Grigorian from Tomassian, Inouye & Grigorian, LLP Attorneys at Law; Attorney Michael D. Turner from Kasdan Turner Thomson Booth, LLP; Attorney Robert S. Throckmorton from Stone, LLP; and Attorney James J. Orland from Orland Law Group have requested that our opinion, filed on August 20, 2024, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2) and (3). The requests are GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J

2